(24 App. Div. 25.)

McMAHON et al. v. SMITH.

KEEGAN et al. v. SAME.

(Supreme Court, Appellate Division, First Department.    December 31, 1897.)

1. ACCOUNTING BY ADMINISTRATOR—PARTIES.
    The only authority for making the surety upon the bond of an administrator a party to a proceeding for an accounting in the surrogate's court is found in Code Civ. Proc. § 2728, and relates exclusively to voluntary, and not to compulsory, accountings.
2. SAME—CONCLUSIVENESS AS TO SURETIES.
    In the case of a proceeding for the compulsory accounting of an administrator, the principle still applies that the surety on his bond is bound, merely by virtue of his relation of privity, by any decree which the surrogate has jurisdiction to make touching the administrator's conduct in the administration of the estate.
3. SAME.
    Where in such a proceeding, instituted against the administrator only, it appears that there is property to be distributed, the failure to issue a supplemental citation, under Code Civ. Proc. § 2743, to necessary parties, who have not appeared or been cited, does not deprive the surrogate of full jurisdiction, as against the administrator, to make a decree which shall conclude him, and, if the distributees are willing to adopt that decree, it does not lie in the mouth of the administrator, nor of his sureties, to complain that the decree is not conclusive.
    O'Brien, J., and Van Brunt, P. J., dissenting.

Appeal from appellate term.

Actions by Dennis McMahon and others against John Smith, and by James Keegan and others against the same defendant.    From a judgment of the appellate term (45 N. Y. Supp. 663) affirming a judgment of the general term (42 N. Y. Supp. 1126, 1127), plaintiffs appeal. Reversed.

The actions were brought against the sureties of an administration bond given by one Michael Keegan, as administrator of his deceased sister, Jane.

The decedent was unmarried, and her next of kin were her three brothers and a nephew and niece, children of Ann Riggs, a deceased sister. In her lifetime the decedent had loaned to her brother Michael, who subsequently became her administrator, different sums of money, for the balance of which she had obtained three judgments, which, with interest, less credit at the time of her decease, amounted to $821.53. Though she obtained some partial payments and notes secured by a chattel mortgage on a liquor saloon carried on by her brother Michael, she was unable to collect the balance already stated; and these judgments, together with cash in savings banks, amounting to $579.35, represented the assets of her estate. At the end of 18 months one of the next of kin filed a petition in the surrogate's court for an accounting, upon which a citation was issued and served on the administrator only. On the return day of the citation the administrator defaulted, and thereupon an order was made that he file his account, and have the same judicially settled. Thereafter the administrator filed his account, to which exceptions were taken, and the issues thereby made were referred and tried. By the decree the administrator, having paid out of the cash which he received certain funeral expenses, was charged with the balance of cash, amounting to $254.98, and with the three judgments already referred to as recovered against him by the decedent in her lifetime, for which, the decree adjudges, the administrator should have accounted, and should be personally charged; thus fixing a balance in the hands of the administrator of $1,076.51. Out of that sum the decree directed that the administrator should pay to the referee, $75; to the stenographer, $80.20; to McMahon, Handley & McMahon, attorneys, $121.99; and to the next of kin the residue, $799.32. The parties above named, respectively, took out transcripts of the decree, and filed the same with the county clerk, who issued execution thereon against the administrator; which being returned unsatisfied, they brought these actions, under section 2607 of the Code of Civil Procedure, upon the bond of the administrator, to recover the respective amounts decreed to be paid. Upon the proceeding before the surrogate neither the sureties upon the bond of the administrator, of whom the defendant, Smith, is one, nor Margaret Riggs and Edward Riggs, two of the next of kin, nor the creditors of the deceased, were cited to appear, nor was there any evidence that creditors did not exist. At the trial the learned judge dismissed the complaint, holding that the decree of the surrogate was not binding upon the sureties, because they were not cited, and that the court erred in charging the administrator with the debts he owed the deceased. The judgments thereupon entered were affirmed by the general term of the city court, and subsequently by the appellate term of this court, with leave to appeal.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Dennis McMahon, for appellants.
George S. Hamlin, for respondent.

RUMSEY, J. On the 13th of February, 1893, Michael Keegan was appointed administrator of the estate of Jane Keegan, and qualified by giving the usual administrator's bond, upon which the defendant, John Smith, was one of the sureties. The bond contained the ordinary provisions that Michael Keegan should faithfully execute his trust, and obey all lawful orders and decrees of the surrogate's court of the county of New York, touching the administration of the estate committed to him. More than 18 months after the appointment of the administrator a petition was presented to the surrogate praying for a judicial settlement of the account of such administrator, and thereupon a citation was issued to him to show cause, at the time fixed therein, why he should not render an account of his proceedings as administrator. Upon the

return day of that citation proof of the service of it upon the administrator was made to appear, and thereupon an order was made requiring him to file an account as such administrator on or before the 9th of November, 1894. On the 21st day of November, 1894, the administrator filed his account in obedience to that order. Exceptions to that account were filed by the petitioner, and the matter was referred to a referee, who, after having heard the testimony, made a report, which appears in the case. In that report it is stated that the administrator had been indebted to the intestate in her lifetime upon certain judgments, amounting to something over $800, which he had failed to collect or pay, and he was charged with the amount of those judgments as assets in his hands. No exceptions to this report were filed, and, upon a hearing before the surrogate, it was confirmed, and the amount in the hands of the administrator, including the amount of these judgments, and deducting the expenses to which the surrogate thought he was entitled, were fixed at $1,076.51. The decree required that the administrator should pay to McMahon and others, the plaintiffs in the action first entitled, the sum of $121.99 as their costs of the proceeding, and that after paying that sum, with some other allowances, the residue of the estate be distributed among the next of kin. A transcript of this decree was duly filed, and the decree was docketed in the county clerk's office, and an execution issued upon it, which was returned unsatisfied in due time. Thereupon these actions were brought by the persons to whom, according to the decree, the money was to be paid. Each action was brought in the city court, and the defense in each case was, in the first place, a general denial of nearly all the allegations; and, in the second place, an allegation that no citation was served upon the defendant, Smith, in any proceeding for the judicial settlement of the accounts of Michael Keegan, as administrator, etc., and that the decree alleged in the complaint, or any decree that was made in the proceedings against the administrator, was without any jurisdiction or validity as against the defendant. Upon the issue thus formed the actions were tried, and they were determined in the city court upon the ground that, as no citation for the accounting was served upon the sureties, the decree of the surrogate was void as to them, and could not be enforced in this action. The judgment was affirmed at the general term of that court upon that ground (42 N. Y. Supp. 1126, 1127); but, when the case came for a hearing before the appellate term of the supreme court upon appeal, it was affirmed (45 N. Y. Supp. 663), not upon that ground, which seems not to have been mentioned or considered, but upon the ground that no citation was issued to the next of kin of the testator, and therefore the decree, so far as it directed the distribution, was void for want of jurisdiction. This point was not raised in the pleadings, and does not seem to have been alluded to upon the trial; the only point made upon the trial upon that branch of the case being that the defendant, John Smith, was not bound by the decree of the surrogate, because he was not cited to attend the accounting, and therefore the surrogate had no jurisdiction to pronounce it.

From an early day it has been held in this state that the sureties upon the bond of an administrator were bound by any decree which the surrogate had jurisdiction to make touching his conduct in the administration of the estate. Casoni v. Jerome, 58 N. Y. 315; Gerould v. Wilson, 81 N. Y. 573; Deobold v. Oppermann, 111 N. Y. 531, 19 N. E. 94; Power v. Speckman, 126 N. Y. 354, 27 N. E. 474. The reason for this holding, as stated by the courts, is that by his contract the surety puts himself in privity with the administrator, and, being so in privity, he is bound by any decree that the surrogate has jurisdiction to make. That rule existed unimpaired until an amendment of the Code of Civil Procedure in the year 1893, when it was provided, by section 2728, that, in certain cases therein more particularly specified, an executor or administrator might present to the court his account, and a written petition praying that it be judicially settled, and that the sureties on his official bond, or the legal representatives of his sureties, and other persons therein mentioned, might be cited to attend the settlement. That provision, however, giving the power to the surrogate to cite a surety of the administrator, applied by its terms only to a voluntary accounting on the part of the administrator; and there is nothing in the act, so far as we can discover, which extends that provision to any other than the case mentioned in the section in which it appears. The accounting, of which the decree at the foundation of these actions was the result, was not a voluntary, but a compulsory, accounting. The administrator was cited to show cause why he should not render an account, and the direction for him to account was made without any appearance on his part, on the proof of the service of a citation upon him. It is quite true that, after he had been directed to make and file an account, he was at liberty, if he saw fit, to take the proceedings prescribed in section 2728, and turn the compulsory accounting into a voluntary accounting, upon which all persons mentioned in section 2728, including his surety, might be made parties to the proceeding. But he could not be compelled to take any such step. Whether he should do it or not was a matter entirely within his own volition. If he saw fit to do it, the surety could be made a party; if he did not see fit to do it, there was no way in which the surrogate could be required, or indeed permitted, to issue a citation to the surety, or to make him in any way a party to the proceeding. If, therefore, he could not be bound by a decree unless he were a party to it, there is no way in which he could be compelled to answer for the default of the administrator in refusing to obey an order made upon compulsory proceedings, because no one is at liberty to take steps to bring him into court except the administrator upon a voluntary accounting, and for that reason he would entirely escape liability, unless the administrator saw fit to bring him in. It certainly could not be supposed that the legislature intended any such result as that to be reached, or that they intended that the surety upon an administrator's bond should be relieved from liability unless the administrator himself saw fit to take the necessary steps to make him liable. The surety, when

he signed the bond, must have known that he became in privity with the administrator, and was bound by a decree against him; and there is no hardship in insisting that he should be bound by that decree because his principal, for whom he voluntarily entered into the contract, is the only one who could require notice to be given to him which would enable him to be present upon the accounting. We are not able to find anything in the statute by which the authority in section 2728 to cite the surety to attend an accounting, upon a petition made by anybody else than the administrator, is given to the surrogate, and, in the absence of that authority, it cannot be deemed that the law has been changed in that regard. In every case, except the one in which the statute authorized the surrogate to issue the citation to the surety, the provisions of the law remain unchanged, and the surety, by reason of his privity, is liable to respond for a failure of the administrator to obey a lawful order of the surrogate.

But it is said that, although the surrogate acquired jurisdiction, yet that jurisdiction was lost because of his failure to issue a supplementary citation to the persons entitled to distribution pursuant to the requirements of section 2743, after it had become apparent that there was something to distribute. It might be sufficient to say that no such defense was set up in the answer, and no proof was made upon the trial which would warrant the finding that these persons were not cited. But, passing that point, there is no doubt that the surrogate had full jurisdiction, as against the administrator, to make a decree which should conclude him; and if the distributees were willing to adopt that decree, as they seem to have been by bringing an action upon it, it did not lie in the mouth of the administrator, nor anybody in privity with him, to complain that the decree was not conclusive. This is established by the provisions of the statute itself, which expressly says that, with respect to the matters enumerated in that section, the decree is conclusive as a judgment upon each party to the special proceedings who was duly cited or appeared, and upon every person deriving title from such party. Code Civ. Proc. § 2743. One of the matters enumerated in the section is the distribution of any part of the estate which was ready to be distributed, and, although the distributees were not brought in by supplementary citation, the statute, by its terms, makes the decree conclusive as to the persons who were in, one of whom was the administrator, who is cited to appear. As the decree is conclusive upon him, and there is no requirement that the surety should be cited in these compulsory accountings, we see no escape from the conclusion that the decree is also conclusive upon the surety, who is in privity with the administrator.

It was suggested upon the argument that the surrogate had no authority to charge the administrator with the amount of his debt to the intestate as assets of the estate, and direct that sum to be distributed, and, because he had no right to do that, the surety is not bound by his action. That question is not in any way presented in the case, nor was there any ruling upon it in the court

49 N.Y.S.—7

below. The only objection to the decree was that the surrogate had acquired no jurisdiction because no citation was served upon the surety, and it is not necessary, therefore, to examine the question thus sought to be presented. For the reasons thus stated we are of the opinion that the courts below erred in the disposition made of this case.

The various judgments rendered below should be reversed, and a new trial ordered in each case, with costs to the appellant in each case to abide the event of the action.

PATTERSON and INGRAHAM, JJ., concur.

O'BRIEN, J. (dissenting). The learned trial judge held that the failure to cite the sureties was fatal to the jurisdiction of the surrogate; and the appellate term, in affirming the judgments, while not dissenting from this view, rested its decision mainly upon the failure to cite the next of kin. We think the judgments should be affirmed upon both grounds, and we might well rest our conclusion upon the able and exhaustive opinions written by the trial judge and the appellate term, were it not that a difference of view in this court justifies a restatement of the reasons upon which we think the judgments of affirmance might safely rest.

Prior to the amendments made to section 2728 of the Code of Civil Procedure (chapter 686, Laws 1893; chapter 421, Laws 1894; and chapter 426, Laws 1895), no necessity existed for issuing a citation to the sureties upon the bond of an executor or administrator. By such amendments, sureties are as much entitled to be cited upon an accounting as are "all creditors," or "the decedent's husband or wife, next of kin, and legatees, if any," who are the other persons mentioned in that section upon whom citations should be served. We need not go far to ascertain the reason for legislative action in favor of the citation of sureties upon an accounting. Prior to the amendments we have a long and unvaried line of decisions which hold that upon such accounting it was unnecessary to cite the surety, but that, nevertheless, the surety was bound by the decree made therein. In many instances this resulted in great hardship, by holding the surety bound by a decree made in a proceeding to which he was not a party, and in which he had not an opportunity to be heard; and yet the courts were obliged to apply the rule of law that being privy to his principal, and there being no obligation to cite him, he was concluded, without a hearing, by any decree that bound his principal. The harshness of applying such a rule in all cases has been mitigated by the legislature by giving the sureties the right to appear and be heard upon an accounting, and such legislation has destroyed the binding effect of a long line of prior decisions based on the theory that any decree which bound the principal also bound the surety. To apply that rule now, after the amendments, would be, in effect, to nullify remedial legislation. The amendment accords to a surety the right to be cited, and to be heard, as fully as it secures the same right to the other persons enumerated in section 2728. As a prerequisite to bind, by a decree, a surety or the other persons named, it is necessary that they

should be cited to attend the accounting. Not only do we regard this rule as axiomatic, but it is enforced by the provisions of the Code itself, which by section 2473 provides:

"Where the jurisdiction  *  *  *  to make a decree or other determination is drawn in question collaterally and the necessary parties were duly cited or appeared, the jurisdiction is presumptively and, in the absence of fraud or collusion, conclusively established by an allegation of the jurisdictional facts contained in a written petition or answer.  *  *  *  The fact that the parties were duly cited is presumptively proved by a recital to that effect in the decree."

And in the following section (2474), while the binding effect of a decree is recognized and provision is made for the correction of objections thereto and omissions therein only by appeal, it is evident that that refers to such remedy being only available to those who were cited and appeared, because by the opening sentence of that section it is provided:

"The surrogate's court obtains jurisdiction in every case by the existence of the jurisdictional facts prescribed by statute, and by the citation or appearance of the necessary parties."

And as we shall see hereafter, in referring to another section of the Code, where, upon an accounting, assets are to be distributed, such a distribution is not to take place until all the parties entitled thereto shall have been served with a citation. Code Civ. Proc. § 2743. The absence in this proceeding of any citation to, or appearance by, the sureties and at least two of the next of kin is not disputed; and, if their appearance was essential, the record shows, not merely the absence of proof of the jurisdictional facts, but, in addition, presumptive proof that no citation was issued; and against that there is not even a pretense of service, nor is there a recital in the decree or proof on the record, the only citation concededly having been that addressed to the administrator alone, upon which the proceeding was carried to a decree. If, as we think, the sureties were necessary parties entitled to a citation, then under the provisions of the Code, to which reference has been made, unless they were cited, the surrogate was without jurisdiction to bind them by a decree.

The question, therefore, resolves itself, in the end, into a narrow compass, as to whether, upon the accounting which resulted in the decree in this proceeding, the sureties were necessary parties. Were this the voluntary accounting of the administrator, which he had initiated in the first instance, or after he had been cited by the next of kin in a compulsory proceeding, then no possible question could arise as to the sureties being necessary parties, because they are expressly made such by section 2728 of the Code. It is insisted, however, that because an involuntary accounting can be initiated, under section 2727, to compel the administrator, as was here done, to file the account, and for the purpose of acquiring jurisdiction over such administrator it is only necessary to cite him, it follows that where, as here, it was conducted throughout as a compulsory accounting, the jurisdiction thus obtained binds the sureties, because by that section no provision is made for the citation of such sureties. We think that the distinction thus sought to be made between a voluntary and an involuntary accounting, with respect to the necessity of the presence of the neces-

sary parties, is not well founded; because it will be seen, by a comparison of the two sections, that the proceedings upon a voluntary and a compulsory accounting are in harmony, and that, for the purpose of a judicial settlement of the account, they are both imperative in the requirement for a citation to all the necessary parties. True, at the beginning of a compulsory proceeding the presence of the administrator or executor is alone required, because at that stage the proceeding is essentially tentative in its character. No account is then presented, as in the voluntary proceeding. All that is done is to cite the executor or administrator to show cause why he should not render his account. If good cause is shown to the contrary, the proceeding is dismissed; or, if the account is filed, the object of the proceeding may be fully accomplished by furnishing the necessary information as to the condition of the estate, and it may terminate at that point. As said in Harris v. Ely, 25 N. Y. 141:

"The rendering an account to the surrogate, by an executor or administrator, and the settlement of such account, including the decree to pay over, are not necessarily one proceeding. The former may be required where no settlement or decree for distribution can at the time be made."

It is therefore unnecessary to cite all the parties at the commencement of the compulsory proceeding. But when it loses its tentative character, and becomes a proceeding for the judicial settlement of the executor's or administrator's account, then the requirement for the citation of all the parties interested becomes as imperative in the compulsory as in the voluntary proceeding. As correctly argued by the respondent, the executor or administrator, when so cited, may, if he chooses, present his petition for a voluntary accounting, and the requirements as to the citation of all parties at once become applicable. If he does not present such petition, and files his account pursuant to the requirement of the court, then the surrogate may at any time issue a supplemental citation to the persons required to be cited upon a voluntary accounting. In either case, and in all cases, a citation of these parties is essential to the judicial settlement of the account.

While, therefore, in a compulsory proceeding, the presence of the executor or administrator only in the first instance is required, if the parties intend to proceed, and have the account judicially settled and binding upon all, then the necessary parties must be cited, the same as in a voluntary proceeding. This view is enforced by the language of section 2743 of the Code, which provides:

"Where an account is judicially settled  *  *  *  and any part of the estate remains and is ready to be distributed to the creditors,  *  *  *  the decree must direct the payment.  *  *  *  If any person who is a necessary party for that purpose has not been cited or has not appeared, a supplemental citation must be issued as prescribed in section two thousand seven hundred and twenty-seven of this act."

Here is a direct reference to the section governing compulsory proceedings, and the language is that a "supplemental citation must be issued." It is clear, therefore, that, in both compulsory and voluntary accountings, the statute is explicit that a final settlement and distribution shall not be made in any case except upon the citation or appearance of all necessary parties.

Although it is thus made clearly to appear that the surrogate had no

jurisdiction to make the decree upon which these actions were brought, it is insisted that the question of jurisdiction cannot be raised in these actions; the argument being based upon the contention that it is only in a direct, and not in a collateral, proceeding that the decree can be assailed.    As said, however, in Ferguson v. Crawford, 70 N. Y. 256:

"It is an elementary principle, recognized in all the cases, that, to give binding effect to a judgment of any court, whether of general or limited jurisdiction, it is essential that the court should have jurisdiction of the person as well as the subject-matter, and that the want of jurisdiction over either may always be set up against a judgment when sought to be enforced, or any benefit is claimed under it."

The decree of the surrogate's court stands upon the same footing in this respect as the judgment of any court, whether of general or limited jurisdiction.    Bearns v. Gould, 77 N. Y. 459, 460; Harrison v. Clark, 87 N. Y. 577.    And in Browning v. Vanderhoven, 4 Abb. N. C. 166, the action was, like the present, upon the bond of an administrator.    There Judge Barrett said:

"The question remains as to whether these sureties can take the objection. The object of the statute (Laws 1870, c. 359, § 1) appears to be to place the surrogate's court in this matter of jurisdiction upon the same plane as courts of general jurisdiction.    Under this section the remedy of the administrator was probably limited to an appeal.    The sureties, however, were not parties to the record and could take no appeal.    It is doubtful whether they could move the surrogate, and, in case of his adherence to the original judgment, obtain a review by appeal from the denial of their motion.    Be that as it may, the legislature never intended, as to the parties dehors the record, to overturn the general policy of the law, which allows the fullest inquiry into jurisdiction."

Upon this branch of the case, therefore, our conclusion is that the failure to cite the sureties and all of the next of kin gave the surrogate no jurisdiction to bind them by the decree; and, as affecting the liability of the surety, we do not think that the claim sued upon in the McMahon suit had any more substantial basis than that in the Keegan suit, both having been predicated upon the binding force and effect of the decree.

Although we think it unnecessary, we might proceed one step further, and dispose of the questions on this appeal by holding that, even if jurisdiction be conceded to the surrogate, the decree does not sustain these actions against the sureties.    The decree, upon its face, shows that the administrator was held liable on the three judgments against him obtained by the testator in her lifetime.    It has been held by the court of appeals that the liability of the administrator under such a decree and the liabilities of the sureties are different.    This question was first presented in Baucus v. Stover, 89 N. Y. 5; and upon a subsequent appeal (Baucus v. Barr, 107 N. Y. 624, 13 N. E. 939) the court of appeals affirmed the judgment holding the sureties not liable, upon the opinions of the general and special terms.    In the former (Baucus v. Barr, 45 Hun, 586) it was said:

"We are inclined to the opinion that liability by the executor in this case for his own debt to the estate, as for money in hand, was not within the purview of the bond; that such liability was not contemplated by those executing it, or, indeed, by the law pursuant to which it was required and given. ✳ * * We are of the opinion that the provision of the statute·declaring

that a debt due from an executor to the estate shall be treated, in the rendering of his account, as money in hand, must be construed with reference to the ordinary obligation, which imposed on him only diligent, faithful, honest action, touching the administration of the estate committed to his charge."

It is unnecessary, however, further to prolong this opinion, because the questions already discussed, as well as others which are raised upon this appeal, are very fully covered in the opinions of the learned trial judge and of the appellate term, to which we have already referred.

We think, therefore, that the judgments should be affirmed, with costs.

VAN BRUNT, P. J., concurs.